Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2026 | **DATE** | December 17, 2001 |
| **CASE TITLE** | Medigene v. Loyola University and Medimmune | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Loyola University's motion for summary judgment on Count I of its counterclaims regarding co-inventorship [ ] is granted. ENTER MEMORANDUM OPINION.

(11) [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| X | Notices MAILED by judge's staff. | | | DEC 19 2001 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | 01 DEC 18 PM 4:33 | docketing deputy initials | |
| | Copy to _____ | | | 12/17/01 date mailed notice | |
| KAM | courtroom deputy's initials | | Date/time received in central Clerk's Office | KAM mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MEDIGENE AG,                    )
                                )
            Plaintiffs,          )
                                )
     v.                          )    No.  98 C 2026
                                )
LOYOLA UNIVERSITY OF CHICAGO,   )
and MEDIMMUNE, INC.             )
                                )
            Defendants.          )

**DOCKETED**

**DEC 1 9 2001**

## MEMORANDUM OPINION

The court has under advisement the motion of Loyola University for summary judgment on Count I of its counterclaims regarding co-inventorship. Loyola seeks a declaration that no Medigene employee is a co-inventor of the subject matter of U.S. Patent No. 6,066,324 or any continuations or divisionals thereof. The motion is directed to MediGene's claim that Dr. Peter Heinrich, the president of MediGene, is a co-inventor of the claims. After considering the extensive briefs and evidentiary materials the parties have submitted, the court has concluded that Loyola's motion should be granted.

## Background

The application for the '324 patent was filed by MediGene. That application, and a number of related foreign applications, listed four co-inventors, Drs. Lutz Gissmann, Jian Zhou, Martin

Mueller, and Jeanette Paintsil. There is no mention of Dr. Peter Heinrich as being a co-inventor.

Dr. Heinrich asserts that he is in fact a co-inventor by reason of the fact that he "conceived that VLPs could be produced after expression of truncated L1 in *E. Coli*" and communicated that concept to Dr. Gissmann, one of the named co-inventors. Declaration of Peter Heinrich, ¶ 5, Ex. 1 to MediGene's Opposition Memorandum. Loyola denies that Heinrich made any contribution to the invention and has submitted various kinds of evidence, including the declarations of three of the four named co-inventors, that support its position. MediGene argues that its evidence is sufficient to create a genuine issue of fact, so that Loyola's motion should be denied. This opinion will discuss MediGene's evidence and whether it is sufficient, as a matter of law, to withstand Loyola's motion.

## The Standard for Summary Judgment

The inventors named in an issued patent are presumed to be the only inventors, and a claim of co-inventorship by an unnamed person must be proved by clear and convincing evidence. <u>Hess v. Advanced Cardiovascular Sys., Inc.</u>, 106 F.3d 976, 979-80 (Fed. Cir. 1997). The Federal Circuit has noted that "'clear and convincing' evidence has been described as evidence which produces in the mind of the trier of fact 'an abiding conviction' that the truth of [the] factual contentions are 'highly probable.'" <u>Builder Inc. v. Kason</u>

Indus. Inc., 849 F.2d 1461, 1463 (Fed. Cir. 1998) (citations omitted). An alleged co-inventor's testimony, standing alone, "cannot constitute clear and convincing proof." Ethicon Inc. v. United States Surgical Corp., 135 F.3d 1456, 1461 (Fed. Cir. 1998). This is because "'the temptation for even honest witnesses to reconstruct, in a manner favorable to their own position, what their state of mind may have been years earlier, is simply too great to permit a lower standard.'" Hess, 106 F.3d at 980 (quoting from Amax Fly Ash Corp. v. United States, 514 F.2d 1041, 1047 (U.S. Ct. of Patent Claims 1975)).

In deciding a motion for summary judgment, "the court reviews the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." Eli Lilly and Co. v. Barr Lab. Inc., 251 F.3d 955, 962 (Fed. Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In applying this test to a validity question, the Eli Lilly Court stated that "a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise."

### The Issue Before the Court

As framed by the foregoing authorities, the issue before the court is whether the evidence is such that no reasonable fact

finder could fail to find that Dr. Heinrich is a co-inventor of the claims of the '324 patent.[1]

### MediGene's Evidence

Dr. Heinrich has filed a sworn declaration that his role in the invention was to contribute the concept "that VLPs could be produced after expression of truncated L1 in *E. Coli* . . . ." This concept is certainly a major part of the invention, and Loyola does not contend otherwise. Therefore, if Dr. Heinrich did contribute this concept to the invention, he would be entitled to co-inventor status. Fina Oil & Chemical Co. v. Ewen, 123 F.3d 1466, 1473 (Fed. Cir. 1997). However, as we have just noted, his testimony, standing alone, does not meet the burden of clear and convincing evidence. There must be independent corroborating evidence which, if believed by the fact finder, would, together with Dr. Heinrich's testimony, clearly and convincingly show that he was a co-inventor.

MediGene argues that there are three items of evidence which furnish the necessary corroboration: (A) Dr. Gissmann's testimony; (B) the recitations in the patent itself; and (C) a statement made by Dr. Zhou in a letter to Heinrich.

We will consider each of these items in turn.

---

[1] Loyola questions whether MediGene is entitled to a jury trial on the co-inventorship issue. We need not decide this question, because the law regarding the burden of proof is the same whether the fact finder is a jury or the court.

### A. Dr. Gissmann's Testimony

Dr. Lutz Gissmann, one of the co-inventors, has furnished a declaration which fully supports Heinrich's claim to inventorship of the notion that virus-like particles are produced after expression of truncated L1 proteins in *E. Coli*. If Gissmann's testimony could be taken at face value, it might of itself provide the necessary corroboration, because Gissmann was in a position to know whether and to what extent Heinrich had contributed to the work of the inventors. However, there is a problem with Gissmann's testimony. The law does not consider the testimony of an <u>interested</u> corroborating witness to be sufficient under the clear and convincing rule. In this case, Gissmann clearly has an interest in the outcome of the co-inventorship issue. He has assigned whatever rights he may have in the invention to MediGene for an amount to be determined in later negotiations. Should MediGene prevail on its claim that Heinrich is a co-inventor, this would give MediGene an interest in the patent that arguably would make Gissmann's assignment more valuable to MediGene. Another factor which gives Gissmann an interest in the outcome of MediGene's co-inventorship claim is that MediGene has granted Gissmann a substantial amount of stock options. The worth of these options would likely be enhanced if MediGene were to prevail on its claim to a share of an invention which it has repeatedly represented in this litigation to be extremely valuable.

We believe that, as a matter of law, this financial interest of Gissmann renders his testimony, either by itself or taken along with all the other evidence, insufficient to provide the necessary corroboration of Heinrich's claim to co-inventorship. This is particularly true in light of the fact that Gissmann's testimony, like that of Heinrich himself, has no documentary support.[2] As Loyola points out, there are no lab notes, no memoranda nor any other contemporaneous documentation of what Heinrich claims to have contributed or what Gissmann claims to have known about. One would expect such documentation. In <u>Woodland Trust v. Flowertree Nursery, Inc.</u>, 148 F.3d 1368, 1373, the Court concluded that the "... oral evidence standing alone, did not provide the clear and convincing evidence necessary to invalidate a patent on the ground of prior knowledge and use under § 102(a)."[3] Commenting on the absence of documentation, the Court stated:

> It is rare indeed that some physical record (e.g., a written document such as notes, letters, invoices, notebooks or a sketch or a drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist.

<u>Id.</u> In <u>Rosco, Inc. v. Mirror Lite Co.</u>, 139 F. Supp.2d 287 (E.D. N.Y. 2001), an infringement suit, the court rejected the

---

[2] We will deal with the alleged "agreement" in Dr. Zhou's letter at a later point in this opinion.

[3] The case did not involve co-inventorship, but the same clear and convincing evidence requirement applies to invalidation of a patent on the ground of prior knowledge and use. "'[C]lear and convincing evidence' [is] a test used in a number of areas of patent law." 1 DONALD S. CHISUM, PATENTS § 3.05(2) at 3-86 (Rel. May 1988), quoted in <u>Woodland Trust</u>, 148 F.3d at 1370.

defendant's contention that it was the first to conceive the invention claimed in plaintiff's patent. Defendant sought to support the testimony of its alleged inventor by the testimony of his fellow employees, Botkin and Martin.

> Mirror Lite did not, however, produce any prototype, documents, drawings, sketches, or photographs to corroborate the testimony of Botkin and Martin. In cases where there is no physical evidence at all, the testimony of friends and interested parties is insufficient to support a determination that the invention of the '984 Patent was conceived and practiced prior to the conception and practice of the device by the competitor. Woodlawn Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1373 (Fed. Cir. 1998); Hay & Forage Industries v. New Holland North America, Inc., 60 F. Supp.2d 1099, 1126 (D. Kan. 1998).

Id. at 303. In the instant case, is not simply a matter of there being no documentary corroboration of Heinrich's claim. There is substantial documentary evidence to show that, before there was any contact between Heinrich and Gissmann, Dr. Zhou had filed a patent application in Australia disclosing a method of expressing full-length L1 proteins in *E. Coli* to produce virus-like particles. There is also documentation which demonstrates that it was Drs. Zhou and Paintsil, working in collaboration in the Loyola laboratory, who discovered that larger quantities of VLPs could be produced by expressing <u>truncated</u> L1 proteins in *E. Coli*.

Thus, the situation is one where the testimony of the alleged co-inventor is corroborated by the testimony of an interested witness and not by any documentation of the kind one would expect

to find. And the only contemporaneous documentation contradicts the claim of the alleged co-inventor.[4]

Loyola has another challenge to Gissmann's testimony which we reject. The argument is that Gissmann's declaration in support of Heinrich cannot be considered by the court because it contradicts a previous sworn statement Gissmann made. The previous statement is the declaration submitted in support of the '324 patent application, wherein, Loyola asserts, Gissmann stated "under penalty of perjury, that he and Drs. Mueller, Paintsil and Zhou were the 'original, first and sole inventors of the claimed subject matter.'" Loyola University's Reply Memorandum at 8. But Loyola misstates what the "combined declaration for patent application and power of attorney" says. It is a printed form, and the language in question reads as follows:

> I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought . . . .

Ex. A to Loyola's Response to MediGene's Sur-Reply Brief. The declaration lists four joint inventors, so the language "I believe

---

[4] The only documentation involving Heinrich was his later e-mail correspondence with Dr. Zhou, where Heinrich attempted to win Dr. Zhou's concession that Heinrich was a co-inventor. In stating his case, Heinrich described as his "entire contribution" the concept that L1 proteins could be expressed in *E. Coli* and that the concept should be included in the patent claims. But, as Loyola correctly argues, expression in *E. Coli* was not new. Among other places, it could be found in Dr. Zhou's Australian patent application. Importantly, Heinrich's "entire contribution" made no mention of truncated L1 proteins. Rather than corroborating his present claim to co-inventorship, then, the e-mails undercut the claim.

I am the original, first and sole inventor (if only one name is listed below)" obviously does not apply. Instead, the only language that could apply is [I believe I am] ". . . <u>an</u> original, first and joint inventor (if plural names are listed below). . . ." (emphasis added.) The form could have been drafted in a way that would have required an affirmation that the listed joint inventors were the <u>only</u> joint inventors. In fact, this was probably the intent of the drafters of the printed form. But if this was their objective, they failed to achieve it. There is nothing in the declaration that represents the listed joint inventors as being the only joint inventors. The rule Loyola invokes — that a party opposing summary judgment "cannot create a genuine issue of material fact by submitting an affidavit or declaration that contradicts 'prior deposition or <u>otherwise</u> sworn testimony'" — (Loyola Reply Memorandum at 8) does not apply to Gissmann.

But notwithstanding his escape from this rule, Gissmann still does not provide corroboration that, alone or with the other evidence cited by MediGene, can meet the burden of proof by clear and convincing evidence.

### B. The Recitations in the Patent Itself

MediGene argues that "the '324 patent itself," prosecuted by Loyola in the United States, "corroborates Dr. Heinrich's testimony that the production of virus-like particles after expression of L1 in *E. Coli* was an inventive contribution to the invention."

MediGene's Opposition Brief at 9. MediGene then quotes language from the specifications indicating that this was indeed part of the invention. Loyola does not dispute this, but points out the obvious fact that there is nothing in the patent that corroborates Heinrich's testimony that it was *he* who made this contribution. The issue is not whether the concept was inventive, but who conceived it. Nothing in the patent suggests in any way that it was Heinrich.

### C.  **The Alleged Agreement by Dr. Zhou**

On June 4, 1998, Dr. Heinrich sent letters to Drs. Gissmann, Mueller and Zhou, requesting them to sign a "Declaration of Inventors," which would have acknowledged that Heinrich was a co-inventor. The recipients of the letter all declined to make any such acknowledgment, and Dr. Zhou, in a response dated June 19, 1998, spelled out his reasons in some detail. He stated that he was unable to sign the declaration "because I am unaware of any contribution — practical, technical or conceptual — that you made toward the Papilloma virus-like particles patent." He went on to say:

- Your name did not arise at any time in any discussions of the work that occurred between any of the listed co-inventors and myself.

- You are not among the authors of any of the published papers arising from this work.

- I am aware of no technical contribution made by you during the period in 1994-95 when the work was being conducted in Chicago.

- I have never corresponded with you regarding any aspect of this work or any other work. Indeed, your name was unknown to me until I received your letter.

- You state that Lutz Gissmann confirmed your co-inventorship "from the very beginning": Lutz has never mentioned to me, nor credited in any paper or conference presentation, any contribution from you, and he has never asked that you be considered among the co-inventors.

Loyola University's Consolidated Rule 56.1 Statements of Uncontested Material Facts, ¶ 55. Heinrich then sent Zhou an e-mail describing his "precise contributions concerning the expression systems." Id., ¶ 56. The letter stated that Heinrich had been insistent that all relevant expression systems be included in the patent claims. Dr. Zhou replied with an e-mail as follows:

> Thank you for your email.
>
> Your contribution described in your e-mail could not justify your request to be a co-inventor as a good patent lawyer will include those claims into the patent anyway. Therefore, I don't think I could sign that statement.

Id. ¶ 57.

We have quoted the e-mail exchange between Drs. Heinrich and Zhou, because the particular statement relied on by MediGene must be taken in context. (Dr. Zhou is deceased, and we have no statement from him concerning the import of his correspondence with Heinrich.) MediGene reads the phrase "your contribution described in your e-mail . . ." in the last-quoted letter from Dr. Zhou as agreeing that it was Heinrich's ". . . idea to express truncated L1

proteins in prokaryotic, including *E. Coli* and yeast." MediGene's Opposition Memorandum at 11. In fact, Heinrich's letter said nothing about truncated L1 proteins. But aside from that, Dr. Zhou's reference to "your contribution described in your e-mail," when read in the context of the series of letters, clearly means "your <u>alleged</u> contribution." Dr. Zhou was not conceding that Heinrich had made any contribution whatever, let alone that he had contributed the basic idea of the invention. MediGene's suggestion to the contrary is so obviously lacking in merit that we would not admit the Zhou e-mail in evidence as tending to prove an "agreement" with Heinrich's request. It has no tendency to prove such an agreement and does not meet the threshold requirement of relevance under Federal Evidence Rule 401.

### **Divisional and Continuing Applications**

MediGene contends that this court has no jurisdiction to decide the issue of inventorship under the pending divisional application because only the Patent Office has jurisdiction to correct the inventorship on a pending application. But Loyola is not seeking to correct anything pending in the Patent Office. It is seeking a declaration that someone not named in the issued patent or the pending application is not a co-inventor. MediGene itself invoked the jurisdiction of this court to declare its co-inventorship, and the argument it makes now is inconsistent with its previous conduct in this litigation. The relief sought by

Loyola in its counterclaim regarding co-inventorship has the same jurisdictional basis as MediGene's co-inventorship claim asserted in its complaint and first amended complaint.

### Conclusion

The court concludes, as a matter of law, that MediGene does not have clear and convincing evidence to prove its claim that Dr. Peter Heinrich is a co-inventor of the claims of the '324 patent. Loyola is entitled to summary judgment that Heinrich is not a co-inventor and an injunction against MediGene and its agents from claiming to the contrary. The same relief will be granted as to divisional and continuing applications.

An appropriate judgment order will be entered.

DATED: December 17, 2001

ENTER: _____
John F. Grady, United States District Judge